Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
Spencer J. Wolgang (SW 2389)
swolgang@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Global Merchandising Services Ltd.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLOBAL MERCHANDISING SERVICES LTD.<br>*Plaintiff*<br><br>v.<br><br>SUNFROG, LLC d/b/a SUNFROG SHIRTS<br>*Defendant* | Civil Action No. 17-cv-10154<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Global Merchandising Services Ltd. ("Plaintiff" or "GMS"), a British limited liability company, by and through its undersigned counsel, alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for: direct and contributory counterfeiting of federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c); direct and contributory trademark infringement of federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.* and unregistered

trademarks in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and false designation of origin and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (the "Action"), arising from the infringement of the GMS Artists' Marks (as defined *infra*) by Defendant SunFrog, LLC d/b/a SunFrog Shirts ("Defendant" or "SunFrog") through its, among other things, manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of infringing and/or counterfeit versions of the GMS Artists' Merchandise (defined *infra*).  Plaintiff seeks injunctive relief, an accounting, compensatory damages and/or statutory damages, treble damages, attorneys' fees and costs, and such other relief as the Court deems proper.

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; pursuant to 28 U.S.C. § 1338(b) as an action arising out of claims for false designation of origin and unfair competition; and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.

3.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this district and, on information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and has caused damage to Plaintiff in this district.

4.     Personal jurisdiction exists over Defendant because on information and belief, Defendant regularly conducts, transacts and/or solicits business in New York and in this

2

judicial district, supplies its goods (including, on information and belief, Infringing Products, as defined *infra*) and services to consumers in New York and in this judicial district, derives substantial revenue from its business transactions in New York and in this judicial district, and/or otherwise avails itself of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and due process.

## THE PARTIES

5.       GMS is a private limited company organized and existing under the laws of England, and having a principal place of business in the United Kingdom and a United States office in Los Angeles, California.

6.       Upon information and belief, SunFrog is a limited liability company organized and existing under the laws of the State of Michigan, and having a principal place of business at 1782 O'Rourke Boulevard, Gaylord, Michigan 49735.

7.       Defendant has enriched itself by fraudulent and illegal conduct as alleged herein, while Plaintiff has suffered enormous financial injury.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Merchandising Services

8.       Plaintiff is a global merchandising company that is involved in the manufacture, importation, distribution, and sale of officially-licensed merchandise for various prominent musical groups and performing artists, often featuring the names, trade names, trademarks, logos and/or likenesses of such groups/artists, including, but not limited to: t-shirts, sweatshirts, hats, and posters, which are primarily sold and/or distributed at concerts and via authorized retail stores, both on and offline ("GMS Artists' Merchandise").

9.     More specifically, Plaintiff is the sole and exclusive worldwide merchandise licensee for a number of renowned and celebrated musical groups and performing artists that have achieved nationwide and international fame, including, but not limited to: Motörhead, as well as Motörhead's iconic, now deceased, lead singer Ian "Lemmy" Kilmister ("Lemmy"), Slayer, Mötley Crüe, Mastodon, Ghost, Five Finger Death Punch, Judas Priest, Rob Zombie, Anthrax, and Alice Cooper (collectively, the "GMS Artists").

10.    The GMS Artists are the owners of certain intellectual property rights in and to the GMS Artists' brands, such as internationally registered and unregistered trademarks, copyrights, and publicity rights (collectively, "GMS Artists' IP").

11.    The GMS Artists have gained significant common law trademark and other rights in and to their respective brands, and specifically, their names, which are used on or in connection with, among other things, the GMS Artists' performances and merchandising efforts, including without limitation, the GMS Artists' Merchandise, and to distinguish the GMS Artists' goods and services from other such musical acts.

12.    Certain GMS Artists have further protected their valuable rights by filing for and/or obtaining federal trademark registrations.  Attached hereto as **Exhibit A** is a chart comprised of a non-exhaustive list of the GMS Artists' trademarks—including federally registered trademarks, pending trademark applications, and/or common law trademarks—and their respective dates of first use in commerce (collectively, the "GMS Artists' Mark(s)"), and true and correct copies of the federal trademark registrations for the GMS Artists' Marks that have issued to registration are attached hereto as **Exhibit B**.

13.    Pursuant to license agreements between Plaintiff and the GMS Artists, Plaintiff and its authorized sub-licensees have been granted the sole and exclusive right to

4

manufacture, distribute, promote, advertise, market, offer for sale and/or sell the GMS Artists' Merchandise, including, without limitation, t-shirts and sweatshirts, in the United States, among other regions, both online and offline.

14.     Plaintiff has also been authorized to enforce the GMS Artists' IP, including, without limitation, the GMS Artists' Marks, and to initiate lawsuits regarding the infringement of the same on behalf of the GMS Artists.

15.     As a result of, among other things, the GMS Artists' celebrated success, the loyal following that such GMS Artists have garnered, and GMS's and the GMS Artists' extensive use of the GMS Artists' Marks in connection with advertising, promotional and merchandising efforts for the GMS Artists, the GMS Artists' Marks have acquired secondary meaning.

16.     Plaintiff and the GMS Artists have gone to great lengths to protect their interests in and to the GMS Artists' IP, including, without limitation, the GMS Artists' Marks. Defendant is not, and has never been, authorized by Plaintiff, the GMS Artists, or any of their authorized agents, to copy, manufacture, import, export, advertise, distribute, offer for sale, or sell any of the GMS Artists' Merchandise or to use the GMS Artists' IP, including, without limitation, the GMS Artists' Marks, or any confusingly or substantially similar designs or marks.

**Defendant's General Business & Operations**

17.     Defendant is in the business of operating an online platform, advertised by Defendant as the "largest online t-shirt platform in the world", located at www.sunfrog.com and/or www.sunfrogshirts.com ("SunFrog Website"), which has been up and running since as early as June 2013, through which print-on-demand consumer products—primarily t-shirts and hoodies that, upon information and belief, are manufactured by Defendant—are offered for sale

and/or sold ("SunFrog Product(s)").

18.     Upon information and belief, Defendant solicits, encourages and/or enables third-party users ("User(s)") to upload designs to the SunFrog Website, which are then printed onto SunFrog Products by, or at the direction of, Defendant at Defendant's manufacturing facilities based in Gaylord, Michigan, and then shipped by Defendant directly to consumers.

19.     Upon information and belief, not only does Defendant manufacture and ship the SunFrog Products, but Defendant also handles all customer service functions, including customer complaints, returns, and the processing thereof.

20.     The Users that upload the designs onto the SunFrog Website remain virtually anonymous to the public, as SunFrog does not reveal a User's true name or contact information, but instead a User is only identified on the SunFrog Website—in a very small font below the image of each SunFrog Product—by the account name and/or pseudonym chosen by the particular User.

21.     In fact, in certain instances, the Users are not even identified (by account name, pseudonym or otherwise) in connection with the listings for the SunFrog Products, such that these SunFrog Products have the appearance of emanating exclusively from Defendant.  For example, attached hereto as **Exhibit C** are true and correct copies of listings for Infringing Products (defined *infra*) that do not identify a User anywhere on the respective pages of the SunFrog Website for such listings.

22.     Further, when Defendant ships the SunFrog Products to end consumers, it includes "SunFrog" branded packaging, stickers and the like, and does not reference the Users in any respect.

6

23.     Upon information and belief, Defendant directly advertises and/or aids, encourages and/or facilitates the advertisement and promotion of SunFrog Products, including Infringing Products (defined *infra*), by, among other things, providing Users with online classes and tutorials aimed at educating Users on marketing tools (*see* academy.sunfrog.com)[1], as well as sales tracking tools, in an effort to maximize sales of SunFrog Products, including Infringing Products (defined *infra*), and profits to Defendant.

24.     Upon information and belief, Defendant directly profits off of each and every sale of the SunFrog Products, including Infringing Products (defined *infra*)—with Defendant paying designers of the SunFrog Products a mere 5.5% commission on each SunFrog Product sold, and affiliates (those driving traffic to the SunFrog website) a starting commission of 35%[2].

25.     Defendant, in its sole discretion, may also alter the price of the SunFrog Products[3].

## Defendant's Continued and Repeated Infringing Conduct

26.     In light of the tremendous success and notoriety of the GMS Artists, the GMS Artists and GMS Artists' IP, including, specifically, the GMS Artists' Marks, have become targets for unscrupulous individuals and entities who wish to take a free ride on the goodwill, reputation and fame that the GMS Artists have amassed in the GMS Artists' IP, including, without limitation, the GMS Artists' Marks.

27.     Plaintiff, pursuant to the license agreements referenced *supra*, investigates and enforces against such infringing activity, and through such efforts, in or about July 2016,

---

[1] Notably, such online classes and web tutorials are part of Defendant's "SunFrog Academy". The SunFrog Academy page of the SunFrog Website explicitly denotes that "We [SunFrog] want to see you succeed because SunFrog is powered by the success of our sellers".
[2] *See* http://blog.sunfrogshirts.com/get-started-today/.
[3] *See* https://www.sunfrog.com/legal/terms/seller-terms.cfm, ¶ 4.2.

learned of Defendant's actions, which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling consumer products (i.e., SunFrog Products) bearing marks and/or designs that are confusingly similar to, identical to, and/or constitute infringement of one or more of the GMS Artists' Marks (collectively hereinafter referred to as, "Infringing Products") to consumers in the United States (including those located in the State of New York), as well as throughout the world, through the SunFrog Website.   A comparison chart comprised of true and correct screenshots of a small number of examples of the vast array of Infringing Products that have been offered for sale and/or sold via the SunFrog Website next to the respective GMS Artists' Marks infringed is attached hereto as **Exhibit D**.

28.     Defendant has not only manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products, but has also used and/or permitted the continued use of the GMS Artists' Marks, and/or marks that are confusingly similar thereto, in connection with the sale of such Infringing Products on the SunFrog Website (e.g., in the URLs, in the listing titles, as tags, etc.), and has permitted the continued use of the GMS Artists' Marks, and/or marks that are confusingly similar thereto, as search terms on the SunFrog Website.

29.     After Plaintiff became aware of Defendant's infringing activities, Plaintiff's counsel sent a cease and desist letter to Defendant on July 7, 2016, which placed Defendant on notice of its infringement of the GMS Artists' IP, and specifically, certain intellectual property rights owned by Motörhead and Lemmy ("C&D", and "Motörhead and

Lemmy IP", respectively).  A true and correct copy of the C&D is attached hereto as **Exhibit E**.[4]

30.     Counsel for Plaintiff received a response to the C&D from counsel for Defendant on July 19, 2016, which directed Plaintiff to Defendant's "Report An Infringement" tool (*available at* https://www.sunfrog.com/Legal/report.cfm) (hereinafter, "Reporting Tool"), and advised Plaintiff that a response to all of Plaintiff's requests would be forthcoming.

31.     Despite having been placed on notice of its infringing activities, Defendant continued, and still continues, to manufacture, advertise, market, promote, distribute, display, offer for sale, and/or sell Infringing Products—those infringing upon the Motörhead and Lemmy IP, as well as other GMS Artists' IP—and to use and/or encourage and/or permit the use of the GMS Artists' Marks, and/or marks that are confusingly similar thereto, on the SunFrog Website on or in connection with Infringing Products.

32.     On or about October 14, 2016, Plaintiff provided Defendant with a non-exhaustive list of the GMS Artists' IP, including, without limitation, the GMS Artists' Marks at issue in this Action, and advised counsel for Defendant of Defendant's continued infringing actions.

33.     To date, Plaintiff has reported well over one hundred twenty (120) listings for Infringing Products to Defendant through Defendant's Reporting Tool on the SunFrog Website and/or via correspondence to Defendant's counsel.

34.     Although most of the Infringing Products at the URLs specifically identified by Plaintiff have been removed from the SunFrog Website, Plaintiff has been unable to verify whether or not Defendant has prevented the fulfillment of any and all pre-existing orders for the same and/or has ceased manufacturing such Infringing Products.

---

[4] Although the C&D also references Iron Maiden Holdings, Ltd., Iron Maiden Holdings, Ltd. is not a party to the instant Action.

35.     Upon information and belief, Defendant is continuing to drive traffic to the SunFrog Website by consciously deciding not to permanently disable certain URLs that were once associated with Infringing Products—some of which impermissibly contain the GMS Artists' Marks in the URLs themselves.  For example, on July 7, 2016, Plaintiff advised Defendant that an Infringing Product (infringing upon the Motörhead and Lemmy IP) was located on the SunFrog Website at the following URL: https://www.sunfrog.com/No-Category/Motorhead-Lemmy-Kilmister.html.  As of the writing of the instant Complaint, when the foregoing URL is clicked upon, it does not result in an error message, but instead diverts consumers to other SunFrog Products that they may be interested in.

36.     Defendant has continued, and still continues, to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale and/or sell Infringing Products that feature similar, if not identical, marks and/or designs to Infringing Products previously discovered by Plaintiff and already brought to Defendant's attention via prior takedown requests.  For example, attached as **Exhibit F** are true and correct date-stamped screenshots of Infringing Products that were reported to Defendant and then removed, as well as true and correct date-stamped screenshots of Infringing Products, with different URLs and SKUs that feature similar, if not identical, marks and/or designs to such originally reported Infringing Products.

37.     Despite having been repeatedly placed on notice of its infringing activities, and the GMS Artists' IP, including, without limitation, the GMS Artists' Marks, as of the date of the filing of this Action, Defendant continues to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale and/or sell Infringing Products and to use and/or encourage and/or permit the use of the GMS Artists' Marks, and/or marks that are

confusingly similar thereto, on the SunFrog Website and/or on or in connection with the Infringing Products.

38.     Consequently, it is clear that Defendant has continued to engage in such illegal and infringing actions as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of the GMS Artists' IP, including, without limitation, the GMS Artists' Marks.

39.     By these dealings in Infringing Products (including, but not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products), Defendant has violated Plaintiff's and the GMS Artists' rights, and has used images, designs and/or marks that are confusingly and/or substantially similar to, identical to, and/or constitute infringement of the GMS Artists' IP, including, without limitation, the GMS Artists' Marks, in order to confuse consumers and aid in the promotion and sale of its Infringing Products.  Defendant's infringing actions began long after the GMS Artists' adoption and use of the GMS Artists' IP, including the GMS Artists' Marks.

40.     Prior to and contemporaneous with its unlawful actions alleged herein, Defendant had knowledge of the GMS Artists' IP, including the GMS Artists' Marks, and Plaintiff's exclusive rights therein, and of the extraordinary fame and strength of the GMS Artists, GMS Artists' IP, and GMS Artists' Marks, as well as the incalculable goodwill associated therewith, and in bad faith adopted the GMS Artists' Marks.

41.     Defendant's illegal and infringing actions, as alleged herein, will cause confusion, mistake, and deceive consumers, the public, and the trade with respect to the source

or origin of Defendant's Infringing Products, and cause consumers to erroneously believe that such Infringing Products are licensed by or otherwise associated with Plaintiff and/or the GMS Artists, thereby damaging Plaintiff and the GMS Artists.

42.     Through these actions, Defendant has, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Plaintiff: counterfeited and infringed the GMS Artists' Marks; engaged in unfair competition; and unfairly profited from such activities at Plaintiff's and the GMS Artists' expense.

43.     Unless enjoined, Defendant will continue to cause irreparable harm to Plaintiff and the GMS Artists.

### CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(Direct Trademark Counterfeiting)**
**[15 U.S.C. §§ 1114(1)(b), 1116(d) and 1117(b)-(c)]**

44.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

45.     Plaintiff, as noted *supra*, is the sole and exclusive merchandising licensee for the GMS Artists, and has been authorized to enforce the GMS Artists' IP, including, without limitation, the GMS Artists' Marks.

46.     The GMS Artists have continuously used their respective GMS Artists' Marks in interstate commerce since at least as early as the dates listed in **Exhibit A**.

47.     Without Plaintiff's, or the GMS Artists', authorization or consent, and with knowledge of the GMS Artists' well-known and prior rights in their GMS Artists' Marks, and Plaintiff's exclusive rights therein, and with knowledge that the Infringing Products bear

12

counterfeit marks, Defendant intentionally reproduced, copied and/or colorably imitated the GMS Artists' Marks and/or used spurious designations that are identical with, or substantially indistinguishable from, the GMS Artists' Marks on or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

48.     Defendant has manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products to the purchasing public in direct competition with Plaintiff, and its authorized sub-licensees, in or affecting interstate commerce, and/or has acted with reckless disregard of Plaintiff's and the GMS Artists' rights in and to the GMS Artists' Marks, through its participation in such activities.

49.     Defendant has applied its reproductions, counterfeits, copies and colorable imitations of the GMS Artists' Marks to promotions and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Infringing Products, which is likely to cause confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive consumers, the public and the trade into believing that the Infringing Products sold by Defendant originate from, are associated with, or are otherwise authorized by Plaintiff or the GMS Artists, thereby making substantial profits and gains to which they are not entitled to in law or equity.

50.     Defendant's unauthorized use of the GMS Artists' Marks on or in connection with the Infringing Products was done with notice and with full knowledge that such use was not authorized or licensed by Plaintiff, or the GMS Artists, and with the deliberate intent to unfairly benefit from the incalculable goodwill inherent in the GMS Artists' Marks.

51.     Defendant's actions constitute willful counterfeiting of the GMS Artists' Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

52.     As a direct and proximate result of Defendant's illegal actions as alleged herein, Defendant has caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the GMS Artists' Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendant will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff.

53.     Based on Defendant's actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendant's unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Direct Infringement of Registered & Unregistered Trademarks)**
**[15 U.S.C. § 1114/Lanham Act § 32(a) & 15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

54.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

55.     The GMS Artists have continuously used their respective GMS Artists' Marks in interstate commerce since at least as early as the dates set for in **Exhibit A**.

56.     Plaintiff, as the sole and exclusive merchandise licensing, which is authorized to enforce the GMS Artists' IP, including, without limitation, the GMS Artists'

Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114 and 15 U.S.C. § 1125.

57. Defendant was, at the time it engaged in its actions as alleged herein, actually aware that Plaintiff is the owner or licensee of the GMS Artists' Marks.

58. Defendant did not seek, and failed to obtain, consent or authorization from Plaintiff and/or the GMS Artists to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, offer for sale and/or sell GMS Artists' Merchandise and/or related products bearing the GMS Artists' IP, including the GMS Artists' Marks, into the stream of commerce.

59. Defendant knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the GMS Artists' Marks and/or which are identical and/or confusingly similar to the GMS Artists' Marks.

60. Defendant knowingly and intentionally reproduced, copies and colorably imitated the GMS Artists' Marks and applied such reproductions, copies or colorable imitations to online listings and/or advertisements used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of the Infringing Products.

61. Defendant's egregious and intentional use of the GMS Artists' Marks in commerce on or in connection with the Infringing Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Infringing Products, and is likely to

deceive the public into believing that the Infringing Products are genuine GMS Artists' Merchandise or are otherwise associated with, or authorized by, Plaintiff or the GMS Artists.

62.     Defendant's actions have been deliberate and committed with full knowledge of Plaintiff's rights in and to the GMS Artists' Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

63.     Defendant's continued, knowing and intentional use of the GMS Artists' Marks without Plaintiff's or the GMS Artists' consent or authorization, constitutes intentional infringement of the GMS Artists' Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114 (federally registered GMS Artists' Marks), and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (unregistered GMS Artists' Marks).

64.     As a direct and proximate result of Defendant's illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the GMS Artists' Marks and the goodwill associated therewith in an amount as yet to be unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendant will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff.

65.     Based on Defendant's actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendant's unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

16

## THIRD CAUSE OF ACTION
### (Contributory Trademark Infringement and Counterfeiting Under the Lanham Act)

66.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

67.     Without Plaintiff's permission, Defendant's Users have knowingly and intentionally designed, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the GMS Artists' Marks and/or which are identical or confusingly similar to the GMS Artists' Marks through the SunFrog Website.  As a result, such Users are liable for direct trademark infringement of the GMS Artists' Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114, and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as willful counterfeiting of the GMS Artists' Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

68.     With full knowledge (constructive or actual through the complaints that have been submitted to Defendant's counsel and/or via the Reporting Tool on the SunFrog Website) of Plaintiff's and the GMS Artists' rights in the GMS Artists' Marks and the goodwill associated therewith, Defendant has encouraged, enabled, facilitated, participated in and/or materially contributed to its Users' illegal, infringing and/or counterfeiting activities by providing its SunFrog Website and its services, which include, without limitation: manufacturing, shipping, quality control, inventory control, pricing control, marketing, advertising, payment processing, distribution and other fulfillment services, and has generated significant income directly from its Users' illegal, infringing and counterfeiting activities, which include, without limitation, the design, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

17

69.     Defendant had, and currently has, actual knowledge of the Users' illegal infringing and counterfeiting activities through, among other notice, Plaintiff's numerous complaints submitted to Defendant's counsel and through the Reporting Tool, which put Defendant on notice of particular Infringing Products and/or listings therefor and/or listings that will infringe in the future, and Defendant was, and is, in the unique position of having sufficient information to identify Infringing Products, as well as the Users responsible for the same, with specificity, and to control and monitor the Users' listings.

70.     Despite notice and knowledge of the Users' illegal, infringing and counterfeiting activities, of particular Infringing Products and/or listings for the same and/or listings that will infringe in the future, as well as its own encouragement, enabling, facilitation, participation in and/or material contribution to such activities, Defendant has deliberately or recklessly disregarded such notifications and/or such illegal, infringing and counterfeiting activities, and/or has otherwise been willfully blind to and/or consciously avoided learning about, the full extent of such illegal, infringing and counterfeiting activities occurring on the SunFrog Website and/or has declined to exercise its right and ability to stop the same.

71.     By providing the SunFrog Website, and other critical manufacturing and fulfillment services, to its Users, Defendant has supplied and controlled, and continues to supply and control, the instrumentality for its Users' infringing and counterfeiting activities, including the design, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products, and Defendant has received, and continues to receive, a direct financial benefit therefrom.

72.     Defendant's egregious, knowing and intentional contribution to its Users' illegal, infringing and counterfeiting activities alleged herein has caused, and is likely to continue

18

to cause, actual confusion, to cause mistake and to deceive the general purchasing public as to the source, origin or sponsorship of the Infringing Products, and is likely to deceive the public into believing that the Infringing Products sold on the SunFrog Website and/or using Defendant's facilitation and fulfillment services, are GMS Artists' Merchandise or are otherwise associated with, or authorized by, Plaintiff or the GMS Artists, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

73.     Defendant is therefore contributorily liable for the infringement and counterfeiting of the GMS Artists' Marks by its Users on the SunFrog Website, which have used, and are continuing to use, Defendant's online platform (i.e., the SunFrog Website), as well as Defendant's facilitation and fulfillment services, in connection with the Users' design, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

74.     Defendant's continuing egregious, knowing and intentional contribution to its Users' illegal, infringing and counterfeiting activities alleged herein constitutes intentional infringement of the federally registered GMS Artists' Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114, intentional infringement of unregistered GMS Artists' Marks in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and willful counterfeiting of the federally registered GMS Artists' Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

75.     As a direct and proximate result of Defendant's egregious, knowing and intentional counterfeiting, infringing and contributory actions alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and valuable rights in and to GMS Artists' Marks and the goodwill associated therewith, in an

amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendant will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable GMS Artists' Marks.

76.     Based on Defendant's counterfeiting, infringing and contributory actions alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendant's counterfeiting, infringing and contributory actions alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

77.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

78.     Plaintiff, as the sole and exclusive merchandise licensing, which is authorized to enforce the GMS Artists' IP, including, without limitation, the GMS Artists' Marks, has standing to maintain an action for false designation of origin and unfair competition under the Lanham Act § 43(a), 15 U.S.C. § 1125.

79.     The GMS Artists' Marks are inherently distinctive and/or have acquired distinctiveness.

80.     Defendant knowingly and willfully used in commerce product designs that are identical or confusingly or substantially similar to and constitute a reproduction of the GMS Artists' Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing,

20

importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public to believe, in error, that Defendant's substandard Infringing Products are genuine GMS Artists' Merchandise or related products, and/or that Defendant's Infringing Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff or the GMS Artists, and/or that Defendant is affiliated, connected or associated with Plaintiff or the GMS Artists, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendant to capitalize on the goodwill associated with, and the consumer recognition of, the GMS Artists' Marks, to Defendant's substantial profit in blatant disregard of Plaintiff's rights.

81.     By manufacturing, importing, exporting and/or assisting and encouraging third parties to manufacture, import, export and by itself advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products, that are identical to, confusingly similar to or colorable imitations of the GMS Artists' Marks and using designs and/or marks that are identical and/or confusingly or substantially similar to, or which constitute colorable imitations of the GMS Artists' Marks, Defendant has traded off the extensive goodwill of Plaintiff and its GMS Artists' Merchandise to induce and did induce, and intends to, and will continue to, induce customers to purchase its Infringing Products, thereby directly and unfairly competing with Plaintiff.  Such actions have permitted, and will continue to permit Defendant to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which it has amassed through its nationwide marketing, advertising, sales and consumer recognition.

82.     Defendant knew or, by the exercise of reasonable care, should have known, that its adoption and commencement of and continuing use in commerce of designs and/or marks that are identical or confusingly and substantially similar to and constitute a reproduction of the GMS Artists' Marks would cause confusion, mistake, or deception among purchasers, users, the public and the trade.

83.     Upon information and belief, Defendant's aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the trade and the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, the GMS Artists' Merchandise and the GMS Artists' Marks.

84.     As a direct and proximate result of Defendant's aforementioned actions, Defendant has caused irreparable injury to Plaintiff by depriving Plaintiff of sales of the GMS Artists' Merchandise and by depriving Plaintiff of the value of the GMS Artists' Marks as a commercial asset, for which it has no adequate remedy at law, and unless immediately restrained, Defendant will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the GMS Artists' Marks in an amount as yet unknown, but to be determined at trial.

85.     Based on Defendant's wrongful actions, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendant's unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.       For an award of Defendant's profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally, directly and/or indirectly, using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.       In the alternative to Defendant's profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services and/or for the willful encouragement, enabling, facilitation, participation in and/or material contribution to such use, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.       For an award of Defendant's profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement and/or contributory trademark infringement of the GMS Artists' Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.       For an award of Defendant's profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the

Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendant, or its agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendant, and all those in active concert or participation with Defendant, and each of them who receives notice directly or otherwise of such injunction from:

    i.  manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products;

    ii.  directly or indirectly infringing in any manner any of the copyrights, trademarks or other exclusive rights of the GMS Artists (whether now in existence or hereafter created) including, without limitation, the GMS Artists' Marks;

    iii.  using any reproduction, counterfeit, copy or colorable imitation of the copyrights, trademarks or other exclusive rights of the GMS Artists (whether now in existence or hereafter created) including, without limitation, the GMS Artists' Marks, to identify any goods or services not authorized by Plaintiff;

    iv.  using any of the GMS Artists' copyrights, trademarks or other exclusive rights of Plaintiff or the GMS Artists (whether now in existence or hereafter created) including, without limitation, the GMS Artists' Marks, or any other marks, designs or artwork that are confusingly or

24

substantially similar to the GMS Artists' Marks on or in connection with Defendant's manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the Infringing Products;

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendant with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendant and Defendant's commercial activities by Plaintiff;

vi. engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the advertising and/or dealing in any Infringing Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix. secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising,

25

marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products;

x.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

xi.  instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above; and

F.    For an order from the Court requiring that Defendant provide complete accountings for any and all monies, profits, gains and advantages derived by Defendant from its manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing Products as described herein, including prejudgment interest.

G.    For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendant's possession that rightfully belong to Plaintiff;

H.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

I.    For Plaintiff's reasonable attorneys' fees;

J.    For all costs of suit; and

K.    For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.


Dated: December 28, 2017        Respectfully submitted,

**EPSTEIN DRANGEL LLP**


BY: /s/ Kerry B. Brownlee
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Spencer J. Wolgang (SW 2389)
swolgang@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Global Merchandising Services Ltd.*