Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
Spencer J. Wolgang (SW 2389)
swolgang@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Global Merchandising Services Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLOBAL MERCHANDISING SERVICES LTD.<br>*Plaintiff*<br><br>v.<br><br>SUNFROG, LLC d/b/a SUNFROG SHIRTS<br>*Defendant* | **Civil Action No. 17-cv-10154-AKH** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

i

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    ABBREVIATED STATEMENT OF FACTS ..................................................... 2

   A. Procedural History ......................................................................................... 2

   B. Plaintiff GMS ................................................................................................. 2

   C. Defendant ....................................................................................................... 3

III.   ARGUMENT ...................................................................................................... 4

   A. VENUE IS PROPER ...................................................................................... 4

      a.  *Legal Standard for Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(3)* ................................................................................................... 4

      b.  *Venue is Proper Under 28 U.S.C. § 1391(b)(1)* ................................... 5

      c.  *Venue is Also Proper Under 28 U.S.C. 1391(b)(2)* ............................... 6

   B. PLAINTIFF CONSENTS TO FOREGO ITS COUNTERFEITING CLAIM (FIRST CAUSE OF ACTION) AND REGISTERED TRADEMARK INFRINGEMENT CLAIM (PART OF SECOND CAUSE OF ACTION) ................................................... 9

      a.  *Exclusive Licensees Have Standing in Certain Circumstances* ........................ 9

      b.  *Plaintiff is Willing to Relinquish its Claim for Direct Counterfeiting and Registered Trademark Infringement* ................................................................................. 10

   C. PLAINTIFF HAS ADEQUATELY PLED ALL OF ITS CLAIMS ............................... 11

      a.  *Legal Standard for Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)* ................................................................................................... 11

      b.  *Plaintiff's Allegations Regarding the GMS Artists' Mark(s) At Issue Are More Than Clear* .............................................................................................................. 11

      c.  *Plaintiff's Allegations Relating to its Exclusive License and How Defendant Has Infringed Are More Than Sufficient* .................................................................. 13

      d.  *Plaintiff Has Alleged that SunFrog Has Made Trademark Use of the GMS Artists' Marks* ............................................................................................................. 13

      e.  *Plaintiff Has Sufficiently Pled Its Claims of Contributory Infringement and Counterfeiting* ...................................................................................................... 16

IV.   CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Arista Records LLC v. Media Servs. LLC*, 2008 U.S. Dist. LEXIS 16485 (S.D.N.Y. Feb. 25, 2008) .................................................................................................................................... 15

*Bates v. C & S Adjusters, Inc.*, 980 F.2d 865 (2d Cir. 1992) ..................................................... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....... 13

*BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591 (S.D.N.Y. 2017)............................... 5

*Born to Rock Design, Inc. v. CafePress.com, Inc.*, 2012 U.S. Dist. LEXIS 129230 (S.D.N.Y. Sep. 7, 2012) ..................................................................................................................................... 19

*Bravado International Group Merchandising Services Inc et al v. Gearlaunch, Inc. et al*, No. 16-cv-08657-MWF-JEM (C.D. Cal. 2016) ........................................................................ 1, 16, 19

*Cartier v. Micha, Inc.*, 2007 U.S. Dist. LEXIS 29785 (S.D.N.Y. Apr. 20, 2007)................. 5, 7, 9

*Confectionary Arts Int'l, LLC v. CK Prods. LLC*, 2018 U.S. Dist. LEXIS 34735 (D. Conn. Mar. 1, 2018) ...................................................................................................................................... 6

*Cosa Xentaur Corp. v. Bow*, 2014 U.S. Dist. LEXIS 46307 (E.D.N.Y. Mar. 31, 2014)............... 8

*Detroit Coffee Co., LLC v. Soup For You, LLC*, 2018 U.S. Dist. LEXIS 26170 (S.D.N.Y. Feb. 16, 2018) ........................................................................................................................... 7, 8, 11

*Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, (D. Conn. Mar. 20, 2014) .......................................................................................................................................... 15

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits, Ltd.*, 736 F.3d 62 (2d Cir. 2013) ............ 11

*Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, No. 13-CV-8997 (JPO), 2016 U.S. Dist. LEXIS 6876 (S.D.N.Y. Jan. 20, 2016)................................................................................ 2

*GMA Accessories, Inc. v. BOP*, LLC, 765 F. Supp. 2d 457 (S.D.N.Y. 2011)............................... 18

*Graham Hanson Design LLC v. 511 9th LLC*, 2011 U.S. Dist. LEXIS 18623 (S.D.N.Y. 2011). 13

*Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D.N.Y. 2010).............. 20

*H-D U.S.A. v. Sunfrog*, No. 17-CV-711-JPS, 2018 U.S. Dist. LEXIS 61865 (E.D. Wis. Apr. 12, 2018) .......................................................................................................... 12, 19, 21, 23

*H-D USA LLC et al v. SunFrog LLC et al.*, No. 17-cv-00711-JPS (E.D. Wis. 2017) ............. 1, 16

*Indian Motorcycle International, LLC et al. v. SunFrog, LLC*, No. 17-cv-14149-TLL-PTM (E.D. Mich. 2017)............................................................................................................................... 1

*Isaac Imp., Inc. v. Boulevard Apparel, Inc.*, 2017 U.S. Dist. LEXIS 127324 (S.D.N.Y. July 30, 2017) ..................................................................................................................................... 9, 10

*Jaguar Cars, Ltd. v. Nat'l Football League*, 886 F. Supp. 335, (S.D.N.Y. 1995)......................... 8

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542 (S.D.N.Y. 2011).............. 13

*Kittay v. Kornstein*, 230 F.3d 531 (2d Cir. 2000) ...................................................................... 15

*L'Oreal USA, Inc. v. Trend Beauty Corp.*, 2013 U.S. Dist. LEXIS 115795 (S.D.N.Y. Aug. 15, 2013) .......................................................................................................................................... 11

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) ........................................................... 13

*Merchdirect LLC v. Sunfrog LLC et al.*, No. 1:17-cv-00488-RJS (S.D.N.Y. 2017) ...................... 1

*Methodist Le Bonheur Healthcare v. SunFrog LLC*, No. 16-cv-02718-JTF-tmp (W.D. Tenn. 2016) ..................................................................................................................................... 1, 17

*Mola, Inc. v. Kacey Enters., LL*C, 2011 U.S. Dist. LEXIS 93040 (W.D.N.Y. Aug. 21, 2011).... 10

*Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905 (S.D. Ohio 2014).................................... 23

*Phx. Entm't Partners, LLC v. J-V Successors, Inc.*, No. 1:16-cv-9451-GHW, 2018 U.S. Dist. LEXIS 55410 (S.D.N.Y. Mar. 31, 2018) .................................................................................. 24

*Ramirez v. Abba Builders Inc.*, 2018 U.S. Dist. LEXIS 27858 (S.D.N.Y. Feb. 21, 2018)........... 21

*Russo v. SunFrog LLC*, No. 1:18-cv-00933-AT (S.D.N.Y. 2018) ................................................. 1

*Schieffelin & Co. v. Jack Co.*, 725 F. Supp. 1314 (S.D.N.Y. 1989) ............................................. 10

*Siemens Aktiengesellschaft v. SunFrog, LLC*, No. 16-cv-08411-NRB (S.D.N.Y. 2016) ............... 1

*Societe des Bains de Mer et su Cercle des Estrangers a Monaco v. MGM Mirage*, 2008 U.S.
Dist. LEXIS 95396 (S.D.N.Y. Nov. 24, 2008) ......................................................................... 6

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ................................................... 20, 22

*Tovey v. Nike, Inc.*, No. 1:12CV448, 2014 U.S. Dist. LEXIS 93901 (N.D. Ohio July 10, 2014) 18

*TradeCommet.com LLC v. Google, Inc.*, 647 F.3d 472 (2d Cir. 2011) ......................................... 5

*TRB Acquisitions LLC v. Seduka, LLC*, 2016 U.S. Dist. LEXIS 64846 (S.D.N.Y. May 10, 2016)
.................................................................................................................................................. 20

*Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. Ct. App. Aug. 22,
2010) ...................................................................................................................................... 21

**Statutes**

28 U.S.C. 1404(b) ....................................................................................................................... 7, 10

28 U.SC. § 1391(b) ................................................................................................................... 5, 6, 8

**Rules**

Federal Rule of Civil Procedure 12(b)(3) ........................................................................................ 4

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................... 13

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff Global Merchandising Services Ltd. ("Plaintiff" or "GMS"), through its undersigned counsel, hereby respectfully submits this Memorandum of Law in Opposition to Defendant SunFrog, LLC d/b/a SunFrog Shirts' ("Defendant" or "SunFrog") Motion to Dismiss Complaint, filed on April 5, 2018 (*Docket Entry No. 14*) ("Opposition" and "Motion to Dismiss", respectively).

## I.   INTRODUCTION

In an attempt to avoid answering the robust allegations set forth in Plaintiff's Complaint, in an effort to drive up legal costs, and as part of Defendant's routine pattern of practice in the numerous lawsuits that have been brought against Defendant arising from its patently infringing conduct,[1] Defendant filed its Motion to Dismiss.  However, in its Motion to Dismiss, not only does Defendant ask this Court to readdress arguments that have been routinely rejected by other district

---

[1] Aside from the instant Action, as of the filing of this Opposition, Defendant has been sued for trademark and/or copyright infringement on ten (10) separate occasions, has filed a motion to dismiss in lieu of an answer in four (4) such actions, and expressed an intent to file such a motion in two (2) others.  Notably, Defendant has only filed an answer in one (1) action. *Methodist Le Bonheur Healthcare v. SunFrog LLC*, No. 16-cv-02718-JTF-tmp (W.D. Tenn. 2016) (trademark infringement action wherein Defendant filed motion to dismiss in lieu of an answer, which was denied); *H-D USA LLC et al v. SunFrog LLC et al.*, No. 17-cv-00711-JPS (E.D. Wis. 2017) (trademark infringement action wherein Defendant filed motion to dismiss in lieu of an answer, which was denied); *Bravado International Group Merchandising Services Inc et al v. Gearlaunch, Inc. et al*, No. 16-cv-08657-MWF-JEM (C.D. Cal. 2016) (trademark infringement action wherein Defendant filed multiple motions to dismiss in lieu of an answer, some of which were granted with leave to amend, and denied in part); *Siemens Aktiengesellschaft v. SunFrog, LLC*, No. 16-cv-08411-NRB (S.D.N.Y. 2016) (trademark infringement action wherein Defendant filed a motion to dismiss in lieu of an answer and the case was then voluntarily dismissed with prejudice); *Merchdirect LLC v. Sunfrog LLC et al.*, No. 1:17-cv-00488-RJS (S.D.N.Y. 2017) (trademark infringement action wherein Defendant filed a letter regarding its intent to file a motion to dismiss, but case thereafter settled); *Russo v. SunFrog LLC*, No. 1:18-cv-00933-AT (S.D.N.Y. 2018) (copyright infringement action in which Defendant filed a letter regarding its intent to file a motion to dismiss, which must be filed by May 9, 2018); *Indian Motorcycle International, LLC et al. v. SunFrog, LLC*, No. 17-cv-14149-TLL-PTM (E.D. Mich. 2017) (trademark infringement action in which answer is not due until May 21, 2018*);The Life is Good Company v. SunFrog LLC*, No. 1:17-cv-10602-LTS (D. Mass. 2017) (trademark infringement action; no motion to dismiss filed); *Hamilton Uptown Limited Liability Company et al v. DOE #1 et al*, No. 1:16-cv-07834-PGG (S.D.N.Y. 2016) (copyright infringement action, which was dismissed with prejudice without any answer or motion filed); *The Ohio State University v. SunFrog, LLC*, No. 17-cv-00229-MHW-EPD (S.D. Ohio 2017) (trademark infringement action wherein Defendant filed an answer).  This Court may properly take judicial notice of the foregoing cases, and the documents associated therewith. *See Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, No. 13-CV-8997 (JPO), 2016 U.S. Dist. LEXIS 6876 (S.D.N.Y. Jan. 20, 2016) (noting that courts routinely take judicial notice of public documents, such as court filings on a motion to dismiss pursuant to 12(b)(6)).

courts, but more importantly, Defendant attempts to improperly introduce its own self-serving allegations, and intentionally disregards many of the substantial allegations set forth in Plaintiff's Complaint. Defendant asks this Court to likewise overlook Plaintiff's well-pled allegations and make determinations that are inappropriate at this stage of the litigation (i.e., at the pleading phase), where Plaintiff's Complaint, which must be construed in Plaintiff's favor, is what controls. Accordingly, Defendant's Motion to Dismiss should be denied outright.

## II.   ABBREVIATED STATEMENT OF FACTS

### A.  Procedural History

On December 28, 2017, Plaintiff filed its Complaint in this action against Defendant for direct and contributory counterfeiting, direct and contributory trademark infringement of both federally registered and unregistered trademarks, and false designation of origin and unfair competition ("Complaint" and "Action", respectively). *Docket Entry No. 1*. Defendant waived formal service of the Summons and Complaint (*see Docket Entry No. 10*), thereby giving it until March 5, 2018 to answer or otherwise move with respect to the Complaint. The parties then agreed to a further extension of Defendant's time to answer or otherwise move until April 5, 2018 (*Docket Entry Nos. 12-13*). In lieu of filing an answer, on April 5, 2018, Defendant filed its Motion to Dismiss.

### B.  Plaintiff GMS

GMS, a private limited company organized and existing under the laws of England, and having a principal place of business in the United Kingdom and a United States office in Los Angeles, California, is a global merchandising company involved in the manufacture, importation, distribution, and sale of officially-licensed merchandise for various prominent musical groups and performing artists, which are primarily sold at concerts and via authorized retail stores, both online and offline. *Complaint*, ¶¶ 5, 8. Specifically, and of particular relevance to the instant Action,

2

Plaintiff is the sole and exclusive worldwide merchandise licensee for the following celebrated musical groups: Motörhead, as well as Motörhead's iconic, now deceased, lead singer Ian "Lemmy" Kilmister ("Lemmy"), Slayer, Mötley Crüe, Mastodon, Ghost, Five Finger Death Punch, Judas Priest, Rob Zombie, Anthrax, and Alice Cooper (collectively, the "GMS Artist(s)"). *Complaint*, ¶ 9.

The GMS Artists are the owners of certain intellectual property rights, including, without limitation, the federally registered trademarks, pending trademark applications and/or common law trademarks listed on Exhibits A and B to Plaintiff's Complaint ("GMS Artists' Mark(s)"). *Complaint*, ¶ 12, Exs. A and B.  Through Plaintiff's licensing agreements with the GMS Artists, it has been granted the exclusive right to manufacture, import, distribute, and sell certain officially-licensed merchandise featuring the names, trade names, trademarks, logos and/or likenesses of the GMS Artists, including, but not limited to, the GMS Artists' Marks ("GMS Artists' Merchandise"), as well as the right to enforce the same.  *Complaint*, ¶¶ 8-9, 13-14.

### C.  Defendant

Defendant is in the business of operating an online platform, advertised by Defendant as the "largest online t-shirt platform in the world", located at www.sunfrog.com and/or www.sunfrogshirts.com ("SunFrog Website"), through which print-on-demand consumer products—primarily t-shirts and hoodies that, upon information and belief, are manufactured by Defendant—are offered for sale and/or sold ("SunFrog Products").  *Complaint*, ¶ 17.  Not only does Defendant manufacture and ship SunFrog Products, but it also is involved in handling all customer service functions, is involved in and/or facilitates advertising, and directly profits off of each and every sale.  *Complaint*, ¶¶ 19, 23, 24.  In or about July 2016, Plaintiff learned of Defendant's actions, which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or

3

selling consumer products (i.e., SunFrog Products) bearing marks and/or designs that are confusingly similar to, identical to, and/or constitute infringement of the GMS Artists' Marks (collectively hereinafter referred to as, "Infringing Products") to consumers in the United States (including those located in the State of New York), as well as throughout the world, through the SunFrog Website. *Complaint*, ¶ 27. Despite having been placed on notice of its infringing activities, Defendant continued, and still continues, to manufacture, advertise, market, promote, distribute, display, offer for sale, and/or sell Infringing Products and to use and/or encourage and/or permit the use of the GMS Artists' Marks, including Infringing Products that feature similar, if not identical, marks and/or designs to Infringing Products previously discovered by Plaintiff and already brought to Defendant's attention via prior takedown requests. *Complaint*, ¶¶ 31, 35.

### III.   <u>ARGUMENT</u>

#### A.   VENUE IS PROPER

##### a.   *Legal Standard for Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(3)*

In ruling on a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), "[a] court must view 'all facts in the light most favorable to the non-moving party.'" *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011). "In the absence of discovery or an evidentiary hearing, a plaintiff seeking to defeat a motion to dismiss. . .pursuant to Rule 12(b)(3) for improper venue need only make a *prima facie* showing". *BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591, 596 (S.D.N.Y. 2017). In order to make such a showing, a given plaintiff must make "'legally sufficient allegations'", including an "'an averment of facts that, if credited[,] would suffice' to establish. . .venue is proper". *Id.* (internal citation omitted).

In cases arising under the Lanham Act, such as this, venue is governed by 28 U.SC. §

1391(b).  *Cartier v. Micha, Inc.*, 2007 U.S. Dist. LEXIS 29785, *8 (S.D.N.Y. Apr. 20, 2007).
Pursuant to 28 U.S.C. § 1391(b) venue is proper in: "(1) a judicial district in which any defendant
resides, if all defendants are residents of the State in which the district is located; (2) a judicial
district in which a substantial part of the events or omissions giving rise to the claim occurred, or
a substantial part of property that is the subject of the action is situated; or (3) if there is no district
in which an action may otherwise be brought as provided in this section, any judicial district in
which any defendant is subject to the court's personal jurisdiction with respect to such action."

### b.   *Venue is Proper Under 28 U.S.C. § 1391(b)(1)*

In asserting that venue is allegedly improper in its Motion to Dismiss, Defendant entirely
disregards 28 U.S.C. § 1391(b)(1).  Under the foregoing section, which is cited in full directly
above, a defendant that is an entity, whether or not incorporated, is deemed to reside "in any
judicial district in which such defendant is subject to the court's personal jurisdiction with respect
to the civil action in question".  28 U.S.C. § 1391(c)(2).  In essence, this section "equates
jurisdiction with venue".  *Confectionary Arts Int'l, LLC v. CK Prods. LLC*, 2018 U.S. Dist. LEXIS
34735, *25 (D. Conn. Mar. 1, 2018) (internal citations omitted) (denying motion to dismiss for
improper venue, finding that since the exercise of personal jurisdiction was appropriate over the
defendant entity, venue was proper under Section 1391(b)(1)); *see also Societe des Bains de Mer
et su Cercle des Estrangers a Monaco v. MGM Mirage*, 2008 U.S. Dist. LEXIS 95396 (S.D.N.Y.
Nov. 24, 2008) (finding that plaintiff's choice of venue was proper pursuant to Section 1391(b)(1),
and denying defendants' motion to dismiss for improper venue, given that defendants were subject
to personal jurisdiction in the Southern District of New York).

This Court unquestionably has personal jurisdiction over Defendant *(see Complaint*, ¶ 4)
and thus, pursuant to 28 U.S.C. § 1391(c)(2), Defendant is deemed to reside in the Southern
District of New York.  In fact, notably, in its Motion to Dismiss, Defendant does not contest

personal jurisdiction and thus, concedes that this Court may properly exercise personal jurisdiction over Defendant. Accordingly, venue is proper under 28 U.S.C. § 1391(b)(1). *See Complaint*, ¶¶ 3-4.

### c.  *Venue is Also Proper Under 28 U.S.C. 1391(b)(2)*

In addition, contrary to what Defendant erroneously argues in its Motion to Dismiss, venue is also proper pursuant to 28 U.S.C. 1391(b)(2). In cases involving trademark infringement, "venue may be proper in each jurisdiction where infringement is properly alleged to have occurred" or in other words, "wherever the alleged consumer confusion occurs". *Detroit Coffee Co., LLC v. Soup For You, LLC*, 2018 U.S. Dist. LEXIS 26170, *4 (S.D.N.Y. Feb. 16, 2018) (internal citation omitted). Pursuant to 28 U.S.C. 1391(b)(2), in order "[t]o demonstrate that a 'substantial part' of the events giving rise to a claim of trademark infringement have occurred in a particular district, the plaintiff can demonstrate either substantial sales of the infringing product in the district or intentional targeting of the infringing product into the district. *Id.* at *4-*5. "The 'substantial part' requirement in § 1391(b)(2) does not prevent laying venue in a particular judicial district, 'even if a greater portion of the events occurred elsewhere' . . .[d]espite the possibility of multiple appropriate venues, the purpose of the venue statues is to protect the defendant against a plaintiff's inconvenient or unfair selection of trial location." *Cartier*, 2007 U.S. Dist. LEXIS 29785, *13 (internal citation omitted) (noting that the proper focus is the quality of a defendant's contacts, not the quantity, and finding defendants' sales of two (2) infringing watches and/or the provision of infringing services to those located in the Southern District of New York was sufficient to establish venue). "[T]he issue is not whether a district at issue is the 'best venue'", but instead, "whether a 'substantial part of the events. . .giving rise to the claim occurred in the [district at issue].'" *Cosa Xentaur Corp. v. Bow*, 2014 U.S. Dist. LEXIS 46307, *19 (E.D.N.Y. Mar. 31, 2014), citing *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) and 28

U.S.C. § 1391(b)(2).

In Defendant's Motion to Dismiss, Defendant—relying on one district court case that has been cited only a handful of times, *Jaguar Cars, Ltd. v. Nat'l Football League*, 886 F. Supp. 335, (S.D.N.Y. 1995)—incorrectly suggests that this District has adopted a formal three-part test to determine when venue is proper, thereby disregarding the overwhelming case law in this District, including those cases cited previously herein, wherein no such three-factor test was employed. Motion to Dismiss, pg. 11; *see, e.g., Detroit Coffee Co.*, 2018 U.S. Dist. LEXIS 26170 (noting that venue is proper in trademark cases under 28 U.S.C. § 1391(b)(2) where substantial sales or intentional targeting of the infringing product occurred, and expressly indicating that where the infringing trademark is affixed is not determinative of venue). Defendant further contends that Plaintiff has not met the foregoing purported "test", as Plaintiff's "single allegation" regarding venue (*Complaint*, ¶ 3) is insufficient. Motion to Dismiss, pg. 11. Yet, Defendant conveniently overlooks the other allegations set forth in its Complaint that do in fact support the propriety of venue in the Southern District of New York. *See, e.g.*, *Complaint*, ¶¶ 3-4 (alleging that Defendant supplies its goods, including on information and belief, Infringing Products, and services to consumers in New York and in this judicial district, and derives substantial revenue therefrom); ¶ 23 (alleging that Defendant advertises and/or aids, encourages and/or facilitates the advertisement and promotion of its products); ¶ 27 (alleging that Defendant has manufactured, imported, exported, advertised, marketed, promoted, distributed, displaying, offered for sale and/or sold consumer Infringing Products to consumers in the State of New York through its interactive website). Plaintiff's foregoing allegations make clear that Defendant's infringing activities have occurred in the State of New York and in this judicial district, including, without limitation, its sales of Infringing Products. In fact, Defendant concedes that sales have occurred in the State of

7

New York, but asserts that such sales (allegedly 2.86%) were "miniscule"[2]; however, Defendant intentionally ignores the fact that venue is proper even if a greater percentage of sales occurred outside this judicial district, and a low number and/or percentage of sales has been found to qualify as substantial and/or significant.  *See Cartier v. Micha, Inc*., 2007 U.S. Dist. LEXIS 29785, *12 (as noted *supra*, finding defendants' sales of two (2) infringing watches and/or the provision of infringing services to be significant enough to establish venue); *Isaac Imp., Inc. v. Boulevard Apparel, Inc.*, 2017 U.S. Dist. LEXIS 127324 (S.D.N.Y. July 30, 2017) (finding that because Boulevard sold nine (9) allegedly infringing goods in the Southern District of New York, venue was proper); *Schieffelin & Co. v. Jack Co.*, 725 F. Supp. 1314 (S.D.N.Y. 1989) (collecting cases where a small percentage of sales was held sufficient to establish venue); *Mola, Inc. v. Kacey Enters., LL*C, 2011 U.S. Dist. LEXIS 93040, *19 (W.D.N.Y. Aug. 21, 2011) (noting that there is "no minimum percentage of total sales that must be met", and finding that the sale of seven (7) allegedly infringing products in New York was sufficient to qualify as a "a substantial part of the events" and as such, venue was proper).

Defendant, primarily focusing on Plaintiff and/or the GMS Artists' alleged contacts,[3] attempts to confuse the issues by stating that venue is proper in the Central District of California. Motion to Dismiss, pgs. 11-12.  Not only is the propriety of venue in another district entirely irrelevant, given, as discussed in detail *supra*, venue may be appropriate in multiple districts, but

---

[2] Defendant has asserted that 2.86% of Defendant's sales of Infringing Products occurred in the State of New York, but has not provided any verifiable proof in support thereof, with the exception of a Declaration of its General Counsel. It is unclear as to what Defendant's total nationwide sales were and/or how Defendant calculated this number and/or if Defendant's sales totals are fully comprehensive of any and all Infringing Products sold throughout time.  At this juncture, Defendant's sales information is uniquely within the control of Defendant, and Plaintiff does not have access to the same.

[3] It is worth noting that the GMS Artists are not parties to this Action, and Defendant fails to mention the contacts that Plaintiff and the GMS Artists do in fact have with the State of New York and this judicial district, including, but not limited to, the fact that such GMS Artists tour in the State of New York and that the GMS Artists' Merchandise is advertised and/or sold here.  Nevertheless, Plaintiff will not belabor this point, as such contacts are irrelevant to the Court's venue analysis.

also, Defendant has not made a motion to transfer pursuant to 28 U.S.C. 1404(b)[4] and thus, the

rationale behind Defendant's identification of a specific alternative venue (i.e., the Central District

of California) is entirely unclear.

Finally, the purpose of venue generally (i.e., to protect a defendant from inconvenience)

(*see Detroit Coffee Co.,* 2018 U.S. Dist. LEXIS 26170, *7-8) would not be served by the dismissal

of this action, as the Southern District of New York is not an inconvenient forum, given that: 1)

Defendant operates an interactive website available in the State of New York and in this judicial

district; 2) Defendant is believed to do substantial business in the State of New York and in this

judicial district and to generate significant revenue therefrom; and 3) Defendant has been sued,

and has defended and/or is currently defending, four (4) other actions in this judicial district.  *See*

footnote 1, *supra.*  Consequently, venue is proper and this case should not be dismissed.

**B.     PLAINTIFF CONSENTS TO FOREGO ITS COUNTERFEITING CLAIM (FIRST CAUSE OF ACTION) AND REGISTERED TRADEMARK INFRINGEMENT CLAIM (PART OF SECOND CAUSE OF ACTION)**

**a.  *Exclusive Licensees Have Standing in Certain Circumstances***

In its Motion to Dismiss, Defendant misstates the relevant law and appears to suggest that

licensees never have standing to bring claims pursuant to 15 U.S.C. § 1114.  For example,

Defendant cites *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits, Ltd.*, 736 F.3d 62 (2d Cir.

2013) for the foregoing proposition (Motion to Dismiss, pg. 13); however, Defendant overlooks

the fact that in that opinion, the Second Circuit noted that licensees may in fact have standing

under certain circumstances, including, but not limited to, when a license "amounts, in fact, to an

---

[4] In its Motion to Dismiss, Defendant does not mention or analyze the factors considered on a motion to transfer.  *See Isaac Imp., Inc.*, 2017 U.S. Dist. LEXIS 127324, *22-23 (noting the nine factors a court considers when ruling on a motion to transfer: "'(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.'").

assignment" and did not expressly overturn prior case law in which courts found exclusive licensees to have standing. *Id.* at 77-78; *see also L'Oreal USA, Inc. v. Trend Beauty Corp.,* 2013 U.S. Dist. LEXIS 115795 (S.D.N.Y. Aug. 15, 2013).

### b. *Plaintiff is Willing to Relinquish its Claim for Direct Counterfeiting and Registered Trademark Infringement*

Nevertheless, in order to streamline this Action, and in light of the strength of Plaintiff's various other claims[5], Plaintiff agrees to forsake its claim for direct trademark counterfeiting (i.e., its First Cause of Action set forth in its Complaint) and its claim for direct registered trademark infringement (i.e., part of its Second Cause of Action set forth in its Complaint).[6]   Accordingly, Defendant's arguments relating to Plaintiff's purported lack of standing for such claims is now moot.  For the sake of clarity, and contrary to what Defendant argues (Motion to Dismiss, footnote 1), the remaining portion of Plaintiff's Second Cause of Action (i.e., its claim for unregistered trademark infringement under 15 U.S.C. § 1125(a)) should not be dismissed as duplicative.  While Plaintiff's Fourth Cause of Action also arises under 15 U.S.C. § 1125(a), its Fourth Cause of Action is for federal unfair competition arising from Defendant's use of false designations of origin and false and misleading descriptions and representations, including, but not limited to, *all* of the GMS Artists' Marks (*see Complaint*, ¶ 12, Ex. A) on or in connection with Infringing Products, whereas its Second Cause of Action is for unregistered trademark infringement arising from Defendant's use of the *unregistered* GMS Artists' Marks.  *Compare Complaint*, ¶¶ 54-65 to 77-85.  Given the fact that the foregoing claims are comprised of discrete allegations, Plaintiff's Second Cause of Action for unregistered trademark infringement should not be dismissed.

---

[5] *See, e.g.*, *H-D U.S.A. v. Sunfrog*, No. 17-CV-711-JPS, 2018 U.S. Dist. LEXIS 61865, *61 (E.D. Wis. Apr. 12, 2018) (a factually analogous case wherein the court recently entered summary judgment against SunFrog in the amount of $19,200,000 in light of SunFrog's infringing and illegal activities).
[6] Plaintiff is amenable to stipulating to drop these claims or if the Court prefers, filing an amended Complaint.

### C.   PLAINTIFF HAS ADEQUATELY PLED ALL OF ITS CLAIMS

#### a.   *Legal Standard for Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*

On a motion to dismiss under Rule 12(b)(6), the movant (i.e., the Defendant in this case) bears the burden of proof.  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003).  "In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor."  *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 545 (S.D.N.Y. 2011).  A court must not weigh the evidence, but instead must merely "determine whether the complaint itself is legally sufficient."  *Id.* at 545 (internal citation omitted).  Further, a court should not dismiss a complaint if the plaintiff has adequately stated a claim that is "plausible on its face".  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A claim is facially plausible, and thus, should not be dismissed, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Graham Hanson Design LLC v. 511 9th LLC*, 2011 U.S. Dist. LEXIS 18623, *5 (S.D.N.Y. 2011) (internal citation omitted).

#### b.   *Plaintiff's Allegations Regarding the GMS Artists' Mark(s) At Issue Are More Than Clear*

Plaintiff has pled all the requisite elements of all of its claims.  In fact, in Defendant's Motion to Dismiss, Defendant does not contend, nor can it contend, that Plaintiff has failed to adequately allege the elements of any of Plaintiff's claims, but instead, Defendant devotes a mere three (3) paragraphs to arguing that Plaintiff's Complaint should be dismissed *in its entirety* because it is purportedly vague and/or lacks specificity.

First, Defendant nonsensically attempts to argue that the Complaint "provides no insight into which of the GMS Artists own which marks and whether the rights stemming from the

ownership of those marks arise under common law or through registration under the Lanham Act",
thereby leaving SunFrog "wholly unable to properly assess and respond to GMS's general claim
that the GMS Artists own trademark rights".  Motion to Dismiss, pg. 16.  Yet, in making this
argument, Defendant points to Plaintiff's Exhibit A—a chart comprised of each GMS Artist, GMS
Artists' Mark(s), the U.S. trademark registration or serial number for each GMS Artists' Mark (or
the explicit denotation that the rights are common law), as well as the date of first use for each
GMS Artists' Mark—and Exhibit B—comprised of copies of the U.S. trademark registration
certificates for each of the registered GMS Artists' Marks—that collectively contain all of the
precise information that Defendant claims is lacking.  Defendant cannot, in good faith, argue that
it is unable to assess which GMS Artists own which GMS Artists' Marks, as this information is
clearly set forth in Exhibits A and B, which are incorporated into Plaintiff's Complaint by
reference.  *Complaint*, ¶ 12.  Furthermore, Plaintiff's Complaint does not lack specificity merely
because Plaintiff identifies Exhibit A as a "non-exhaustive list" of the GMS Artists' Marks
(*Complaint*, ¶ 12).[7]  *Arista Records LLC v. Media Servs. LLC*, 2008 U.S. Dist. LEXIS 16485
(S.D.N.Y. Feb. 25, 2008) (finding that reference to a "non-exhaustive" or "illustrative" list of
rights did not warrant dismissal of an otherwise well-pled complaint, given that the complaint
listed fifty-one allegedly infringed works, and defendant did not challenge the sufficiency of the
allegations relating to those specific works).  Consequently, Plaintiff has unquestionably satisfied
the pleading standards set forth in Federal Rule of Civil Procedure 8(a).  *See, e.g., Devone v. Finley*,
No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, *18 (D. Conn. Mar. 20, 2014), citing
*Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) ("[w]hen a 'court underst[ands] the

---

[7] Plaintiff refers to Exhibit A as "non-exhaustive", as it is not fully comprehensive of all of the GMS Artists' Marks, but only those known to have been infringed by Defendant.  Defendant may have infringed other rights; however, at this juncture, Plaintiff is not privy to any such information, as such information is within the hands of Defendant.

allegations sufficiently to determine that [a party] could state a claim for relief, ... the complaint has satisfied Rule 8.").

### c. *Plaintiff's Allegations Relating to its Exclusive License and How Defendant Has Infringed Are More Than Sufficient*

Likewise, Defendant's arguments, regarding any alleged lack of specificity regarding "the marks to which it [Plaintiff] has an exclusive license and whether (and if so, how) those specific marks have been infringed" must readily be rejected.   Motion to Dismiss, pg. 16.   Plaintiff's Complaint, portions of which Defendant entirely disregards in its Motion to Dismiss, makes plain that Plaintiff has an exclusive license, and has been authorized to use, enforce and/or protect the GMS Artists' names, trademarks, logos and/or likenesses, including, without limitation, the GMS Artists' Marks set forth on Exhibits A and B.   *See Complaint*, ¶¶ 8-14, 16, 25, 56, 78.   Exhibit D of Plaintiff's Complaint is then comprised of examples of Infringing Products that have been offered for sale and/or sold via Defendant's online platform, and notably, Exhibit D includes an example of how *each* of the GMS Artists' Marks identified on Exhibit A has been infringed. *Complaint*, ¶ 12, 27; *Compare* Exhibits A and D.   Accordingly, once again, Defendant cannot, in good faith, claim that it lacks notice of the allegations against it.

### d. *Plaintiff Has Alleged that SunFrog Has Made Trademark Use of the GMS Artists' Marks*

Defendant, once again overlooking all of the allegations set forth in Plaintiff's Complaint, further improperly avers that Plaintiff's Complaint should be dismissed because "[b]ased on the facts alleged. . .it is plainly clear that SunFrog has not used the GMS Artists' [M]arks in commerce. . .because doing so would not make sense".   Motion to Dismiss, pg. 18.   Not only is the foregoing assertion entirely conclusory, but more importantly, it is not supported by the facts at hand or the relevant case law, and has already been raised by Defendant in other litigations and has been rejected by the district courts in such actions, including one in the Southern District of New York.

13

*See, e.g., Bravado Int'l Grp. Merchandising Servs., Inc., et al.*, Civil Action No. 15-cv-08657-MWF-JEM, *Docket Entry No. 70*, pg. 7 (rejecting SunFrog's argument that its conduct did not amount to "trademark use", and denying motion to dismiss on such grounds, finding that plaintiffs had alleged that SunFrog manufactured, printed, and sold the infringing merchandise and as such, at the pleading stage, such allegations were sufficient); *H-D U.S.A., LLC, et al.*, Civil Action No. 17-cv-711-JPS, *Docket Entry No. 40*, pg 6 (rejecting SunFrog's argument regarding lack of use in commerce, and denying motion to dismiss, finding that "SunFrog operates the very printers that print infringing goods" and that SunFrog failed to cite any case that "colorably supports its position"); and *Methodist Healthcare, Memphis Hospitals d/b/a Le Bonheur Children's Hospital*, Civil Action No. 16-cv-02718-JTF, *Docket Entry No. 22*, pg. 5 (rejecting SunFrog's argument that it did not use plaintiff's trademark in commerce, and denying SunFrog's motion to dismiss, finding that "[i]t is alleged that LeBonheur owned and used the mark, SunFrog used the mark in commerce when it printed and sold the apparel, and the origin of the apparel was confusing" and thus, plaintiff had sufficiently stated a claim for trademark infringement).

Defendant does not contest that Plaintiff has adequately alleged the elements of its claims set forth in its Complaint, but instead that there can be no likelihood of confusion, as a matter of law, because SunFrog did not use the GMS Artists' Marks in commerce. Yet, SunFrog critically fails to properly consider that Plaintiff has alleged that SunFrog has, among other things, ***manufactured***, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products that, at a minimum, bear the GMS Artists' Marks on the goods themselves. *Complaint*, ¶ 28; *see also Complaint*, ¶¶ 17, 27, Ex. D, 36-37, 39, 48, 59, 80-81.

In support of its argument, Defendant cites to the Trademark Manual of Examining

Procedure ("TMEP"), § 1202.03 for the proposition that "purely ornamental uses" such as "placing an image on a t-shirt" does not qualify as trademark use.[8]   However, Defendant fails to mention that TMEP, § 1202.03(1) also denotes that "ornamental matter on a T-shirt (e.g., the designation "NEW YORK UNIVERSITY") can convey to the purchasing public the 'secondary source' of the T-shirt (rather than the manufacturing source). Thus, even where the T-shirt is distributed by a party other than that identified by the designation, sponsorship or authorization by the identified party is indicated."   Similarly, SunFrog's use of the GMS Artists' Marks on Infringing Products, manufactured and/or distributed by SunFrog, erroneously indicates that GMS and/or the GMS Artists have sponsored or authorized SunFrog's Infringing Products.

Likewise, Defendant's citation to and/or reliance on *Tovey v. Nike, Inc.*, No. 1:12CV448, 2014 U.S. Dist. LEXIS 93901 (N.D. Ohio July 10, 2014) and *GMA Accessories, Inc. v. BOP*, LLC, 765 F. Supp. 2d 457, 463 (S.D.N.Y. 2011) is misguided.   Not only is the *Tovey* opinion non-precedential and procedurally distinct, as it emanates from the Northern District of Ohio and involved a motion for summary judgment rather than a motion to dismiss, but it is also factually distinguishable.   Unlike in *Tovey*, here: 1) the Infringing Products feature exact replicas of the stylized versions of certain GMS Artists' Marks (*Complaint*, ¶ 12, 27; *Compare* Exhibits A and D) and therefore, do not often differ in font or design; 2) the GMS Artists' Marks are largely not common words; and 3) a print-on-demand service provider (i.e., SunFrog) is involved in the instant Action.   In a similar vein, *GMA* is also clearly distinguishable from the instant Action, given that: 1) *GMA* also involved the plaintiff's motion for summary judgment, not a motion to dismiss; and 2) the defendant in *GMA*'s activities in supplying showroom services did not rise to the level of

---

[8] In support of its ornamental use argument, SunFrog argues that its use of its own branded packaging, stickers and the like in connection with Infringing Products, which themselves bear the GMS Artists' Marks, somehow absolves SunFrog of liability.   Yet, in making the foregoing argument, SunFrog essentially admits to co-branding (i.e., that it has used its own trademark(s) alongside the GMS Artists' Marks).

SunFrog's conduct—given that SunFrog is an active participant that is involved in the advertisement, *manufacturing* and/or distribution of Infringing Products, as well as customer service functions (*Complaint*, ¶¶ 17-19, 22-23, 27), whereas, as explicitly noted by the Court in GMA, the defendant did not place the mark on any goods and was not involved in the manufacturing of any such goods. *See Id.* at 463; *see also H-D U.S.A. v. Sunfrog*, No. 17-CV-711-JPS, 2018 U.S. Dist. LEXIS 61865, *61 (E.D. Wis. Apr. 12, 2018) (finding SunFrog's reliance on *GMA* to be misguided, given that SunFrog "not only advertises and offers infringing designs for sale and prints them onto products, it also ships the finished products and handles payment processing").

In unpersuasively arguing that the above-referenced cases are similar or "identical" to the instant action, when they are clearly not, Defendant conveniently overlooks relevant case law involving Defendant itself or defendants that are in fact similarly situated to SunFrog (i.e., other print-on-demand websites). *See, e.g., Bravado Int'l Grp. Merchandising Servs., Inc.*, Civil Action No. 15-cv-08657-MWF-JEM, *Docket Entry No. 70*; and *Born to Rock Design, Inc. v. CafePress.com, Inc.*, 2012 U.S. Dist. LEXIS 129230, *12 (S.D.N.Y. Sep. 7, 2012) (finding the fact that CafePress imprints designs on merchandise and ships such merchandise to customers constitutes use in commerce, noting that 'use in commerce . . .on goods' is readily apparent in CafePress' print-on-demand business"). In light of the foregoing, Defendant's motion to dismiss Plaintiff's Second Cause of Action and Plaintiff's Fourth Cause of Action must be denied.[9]

### e. *Plaintiff Has Sufficiently Pled Its Claims of Contributory Infringement and Counterfeiting*

"To state a claim for contributory infringement in the Second Circuit, a plaintiff must allege

---

[9] Although Defendant's Motion to Dismiss Plaintiff's First Cause of Action should likewise be denied on these grounds, as noted *supra*, Plaintiff has consented to withdrawal its First Cause of Action and as such, Defendant's argument regarding the First Cause of Action is moot.

that 'a manufacturer or distributor intentionally induces another to infringe a trademark, or' that

the manufacturer or distributor 'continues to supply its product to one whom it knows or has reason

to know is engaging in trademark infringement.'" *TRB Acquisitions LLC v. Seduka, LLC*, 2016

U.S. Dist. LEXIS 64846, *12 (S.D.N.Y. May 10, 2016), citing *Tiffany (NJ) Inc. v. eBay, Inc.*, 600

F.3d 93, 104 (2d Cir. 2010). "Even if a defendant does not seek out and intentionally induce a

third-party to commit trademark infringement, it may still be held liable for the infringement if it

supplied services with knowledge or by willfully shutting its eyes to the infringing conduct, while

it had sufficient control over the instrumentality used to infringe." *Gucci Am., Inc. v. Frontline*

*Processing Corp.*, 721 F. Supp. 2d 228, 249 (S.D.N.Y. 2010). In the foregoing context, knowledge

signifies that "a service provider must have more than a general knowledge or reason to know that

its service is being used to sell counterfeit goods. Some contemporary knowledge of which

particular listings are infringing *or will infringe in the future* is necessary." *Tiffany (NJ) Inc.*, 600

F.3d 93, 104 (emphasis added).

Defendant attempts to liken its business model to eBay in *Tiffany (NJ) Inc.* and

Amazon.com in *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. Ct.

App. Aug. 22, 2010)[10]—a decision issued by a state appellate court, which is not binding on the

instant Court—and argues that since it has purportedly "adopted an industry standard notice and

takedown procedure", and since GMS has supposedly only alleged that SunFrog has general

---

[10] Notably, neither of these decisions involved a motion to dismiss, but instead a judgment following a bench trial and a motion for a preliminary injunction. Defendant preemptively anticipates that Plaintiff "will argue that this case is distinguishable from *Tiffany* because it has alleged that SunFrog prints the designs submitted by users on physical products" (Motion to Dismiss, pg. 26). Yet, the instant Action is not distinguishable from both *Tiffany* and *Tre Milano* merely because of the "physicality of the outcome of the service" (Motion to Dismiss, pg. 27), but instead, because of SunFrog's intimate involvement in the infringing conduct by, among other things, its involvement in the advertisement, manufacturing and distribution of Infringing Products, as alleged in Plaintiff's Complaint and further discussed herein, which collectively demonstrate SunFrog's direct infringement and contributory infringement. *See H-D U.S.A.,* 2018 U.S. Dist. LEXIS 61865, *82, *92 (finding that SunFrog itself performed the infringing conduct and as such, was directly liable, and that "SunFrog cannot build a business around promoting and manufacturing infringing designs and then be freed from liability merely because it offers a notice-and-takedown procedure").

knowledge, Plaintiff's contributory infringement and counterfeiting claims must fail.  As a preliminary matter, SunFrog's attestations regarding its own takedown procedures (*see* Motion to Dismiss, pg. 24) must be disregarded, as such averments are not only uncorroborated and self-serving, but also not properly considered on a motion pursuant to Fed. R. Civ. Procedure 12(b)(6). *See, e.g., Ramirez v. Abba Builders Inc.*, 2018 U.S. Dist. LEXIS 27858, *5 (S.D.N.Y. Feb. 21, 2018) (noting that on a motion to dismiss, review is limited to the complaint itself, which is taken as true, documents attached to the complaint such as exhibits, as well as those integral to the complaint, and that it is improper to consider matters outside the pleadings).  Further, SunFrog hastily disregards Plaintiff's allegations regarding SunFrog's ***specific*** knowledge of listings and/or products that will infringe in the future.  *See Tiffany (NJ) Inc.,* 600 F.3d 93, 104.  Plaintiff alleges, among other things, that: 1) Defendant was placed on notice of the GMS Artists' Marks and the infringement thereof (*see Complaint*, ¶¶ 29, 32-33); 2) Plaintiff has been unable to verify whether or not Defendant, once notified of specific Infringing Products on its website, actually prevented the fulfillment of any and all pre-existing orders and/or ceased manufacturing such Infringing Products offline (*Complaint*, ¶ 34); 3) SunFrog has knowingly attempted to capitalize off of the GMS Artists' Marks by failing to disable certain URLs (*Complaint*, ¶ 35); 4) Defendant directly advertises and/or aids encourages and/or facilitates the advertisement and promotion of Infringing Products by providing its users with marketing tools in an effort to maximize SunFrog's own profits; and 5) Defendant has continued to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale and/or sell Infringing Products and/or permit others to use the GMS Artists' Marks on Infringing Products that feature ***identical*** or at the very least, similar, marks and/or designs to Infringing Products that were previously reported (*Complaint*, ¶¶ 36-37, Ex. F).  The foregoing allegations alone, coupled with the remaining allegations set forth

in Plaintiff's Complaint, demonstrate far more than "generalized knowledge" that some goods on SunFrog's website might be counterfeit (*see Tiffany (NJ) Inc.,* 600 F.3d 93), but instead, the intentional nature of SunFrog's actions and its specific knowledge of listings and/or products that "will infringe in the future", as well as SunFrog's inducement of the infringing activities of others. *Id.* at 104.

As espoused by the Second Circuit in *Tiffany (NJ) Inc.*, a service provider may not shield itself from liability by "looking the other way" when it has reason to know of particular infringing transactions.  *Id.* at 109; *see also Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 921 (S.D. Ohio 2014) (internal citations omitted) ("'[o]strich-like' business practices amount to willful blindness, which is sufficient to show [the] intent necessary to be a contributory infringer' under the Lanham Act.'").[11]  Yet again, Defendant focuses on cases that are clearly distinguishable, and fails to address cases that involve Defendant itself, which are factually identical to the case at hand. For example, in a recent summary judgment decision entered against SunFrog, the Court rejected many of the same arguments set forth by Defendant in its Motion to Dismiss.  *H-D U.S.A.,* 2018 U.S. Dist. LEXIS 61865, *87 (finding that case precedent "spell[ed] doom for SunFrog's head-in the-sand approach to infringement").  Specifically, the Court found that SunFrog actively induces infringement by marketing products bearing infringing designs and training its sellers to do the same, and that SunFrog had reason to know of the infringing activities of its users in light of the fact that although designs were removed in response to takedown notices, "identical or similar designs popped up again just as quickly".  *Id*. at *87.  Therefore, in light of the fact that Plaintiff has alleged many of the same things as the plaintiff in the aforesaid decision (*see, e.g.*, *Complaint* ¶ 23, 36, Ex. F), and that this Action is only in the pleading phase, Defendant's Motion to Dismiss

---

[11] The sheer number of trademark and/or copyright infringement actions that have been brought against SunFrog lends further support to the notion that Defendant has in fact taken an "ostrich-like" approach.  *See* footnote 1, *supra*.

of Plaintiff's Third Cause of Action must readily be denied.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully submits that Defendant's Motion to Dismiss should be denied.  In the unlikely event that the Court should grant Defendant's Motion to Dismiss, or any portion thereof, Plaintiff respectfully requests leave to amend its Complaint to cure any alleged deficiencies, which is the "usual practice" in this Circuit. *See, e.g., Phx. Entm't Partners, LLC v. J-V Successors, Inc.*, No. 1:16-cv-9451-GHW, 2018 U.S. Dist. LEXIS 55410, *19 (S.D.N.Y. Mar. 31, 2018).

Dated: April 19, 2018                          Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY<u>:  /s/ Kerry B. Brownlee</u>
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Spencer J. Wolgang (SW 2389)
swolgang@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Global Merchandising Services Ltd.*