UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
:
GLOBAL MERCHANDISING SERVICES, LTD    :
:    **ORDER GRANTING IN PART**
Plaintiff,    :    **AND DENYING IN PART**
:    **DEFENDANT'S MOTION TO**
:    **DISMISS**
-against-    :
:    17 Civ. 10154 (AKH)
:
SUNFROG, LLC d/b/a SUNFROG SHIRTS,    :
:
Defendant    :
:
-------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Plaintiff Global Merchandising Services, LTD ("GMS") filed this action on December 28, 2017, alleging violations by Defendant SunFrog, LLC of federal trademark law, 15 U.S.C. §§ 1114, 1125, for operating an online platform that facilitates the design, marketing, and sale of various consumer products containing marks likely to cause customer confusion about the origin or sponsorship of the goods. Defendant now moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(3), (6), arguing that venue is improper and that the Complaint fails to state a plausible claim for relief. For the reasons stated below, I find that venue is proper but that the complaint fails to state a plausible claim for relief. The motion to dismiss is denied in part and granted in part.

    Defendant also argues that Plaintiff lacks standing to bring claims under § 1114 (Count I and part of Count II), which allow only "registrants" of trademarks to bring an action for infringement. Defendant argues that Plaintiff's status as an exclusive licensee is insufficient to confer such standing to sue for infringement. *See* 15 U.S.C. § 1127; *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 78 (2d Cir. 2013). Plaintiff does not oppose

1

this argument, *see* Opposition at 10, and consents to dismiss the claims brought pursuant to § 1114. The claims brought pursuant to § 1125 (*i.e.*, unfair competition and false designation of origin), which does not limit infringement actions to "registrants" or require a federal trademark registration, are not dismissed for lack of standing. *See id.* ("By contrast, Section 43 of the Act allows suits '*by any person* who believes that he or she is or is likely to be damaged' by the defendant's actions.") (emphasis in original) (quoting 15 U.S.C. § 1125(a)(1)).

## COMPLAINT

### *Claims*

The Complaint contains four Counts. Count I is entitled "Direct Trademark Counterfeiting" and refers to § 1114. Count II is entitled "Direct Infringement of Registered and Unregistered Trademarks," and refers to both § 1114 and § 1125. Count III is entitled "Contributory Trademark Infringement and Counterfeiting Under the Lanham Act," and refers to both § 1114 and § 1125. Finally, Count IV of the Complaint is entitled "False Designation of Origin, Passing Off and Unfair Competition," and refers only to § 1125(a).

As mentioned, Plaintiff has consented to dismiss the claims based on § 1114 in Count I and part of Count II, which Plaintiff now will have to re-label.

### *Background*

Defendant SunFrog, an LLC organized under the laws of and having its principal place of business in Michigan, has operated an online platform since June 2013 offering consumers the ability to print on-demand products like t-shirts, hoodies, and mugs. Defendant allows users to upload product designs to its website, which are then manufactured or printed by (or at the direction of) Defendant and shipped to end-users. Complaint at ¶ 17–18.[1] Defendant handles all

---

[1] For the purposes of this motion, the Court accepts as true all well-pleaded facts in the Complaint. Paragraph symbols ("¶") refer to paragraphs in the Complaint.

2

customer service functions, including customer complaints and returns. ¶ 19. Often, listings of particular products do not contain the username of the entity or person who uploaded or designed that product. ¶ 20–21. Defendant provides users with marketing and educational tools to aid in users' ability to create and market their products. ¶ 23. Defendant receives a certain percentage of the revenue associated with the sale of such products. ¶ 24.

Plaintiff is a global merchandising company organized under the laws of England, and the sole and exclusive worldwide merchandise licensee for a number of musical groups, including (as relevant here) Motorhead, Ian Lemmy Kilmister, Slayer, Motley Crue, Mastodon, Ghost, Five Finger Death Punch, Judas Priest, Rob Zombie, Anthrax, and Alice Copper ("GMS Artists"). ¶ 9.

Attached to the Complaint is "Exhibit A," a "non-exhaustive list" referring to sixteen U.S. Trademark Registrations owned by various of the GMS Artists. According to the Complaint, Plaintiff is a party to license agreements giving it the sole and exclusive right to manufacture and distribute merchandise of the GMS Artists, and to otherwise enforce the GMS Artists' intellectual property rights, including by initiating lawsuits. ¶ 12–14.

According to the Complaint, Defendants have marketed and sold products containing GMS Artists' trademarks, including in the state of New York. ¶ 27. Attached to the Complaint is "Exhibit D," a comparison chart with fourteen examples of screenshots of products available on the SunFrog website, alongside the trademarks the products allegedly infringe on.

Plaintiff sent a cease and desist letter to Defendant on July 7, 2016. Defendant responded on July 19, 2016, directing Plaintiff to its "Report An Infringement" tool. ¶ 29–30. On October 14, 2016, Plaintiff provided Defendant with a non-exhaustive list of the intellectual property of

3

GMS Artists. ¶ 32. Plaintiff has since reported over one hundred and twenty listings through Defendant's Reporting Tool or through correspondence with Defendant. ¶ 33.

## DISCUSSION

### I. The Court has Specific Jurisdiction over Defendant

SunFrog did not move to dismiss for lack of personal jurisdiction, and I find that the Court has specific jurisdiction over SunFrog.

#### a. Legal Standards

"[T]he plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). "A prima facie case [of personal jurisdiction] requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed.Appx. 16, 19 (2d Cir. 2015). "In ruling on the motion the court may rely on facts and consider documents outside the complaint." *Cartier v. Micha, Inc.*, No. 06 CIV. 4699(DC), 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007). "Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices[.]" *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits—subject, of course, to certain constitutional limitations of due process." *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998). Under New York law, "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or

4

administrator, who in person or through an agent: transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" N.Y. C.P.L.R. § 302(a)(1).

"The constitutional analysis under the Due Process Clause consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry. The 'minimum contacts' inquiry requires [the court] to consider whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. The 'reasonableness' inquiry requires [the court] to decide whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012). (internal quotation marks and citations omitted). "[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co. v. Superior Court of Calif., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The requisite 'minimum contacts' analysis 'overlaps significantly' with New York's § 302(a)(1) inquiry into whether a defendant transacted business in the State." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 515 (S.D.N.Y. 2016) (quoting *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 358 (S.D.N.Y. 2014)).

### b. Application

Here, the Complaint alleges that, on information and belief, Defendant marketed and sold infringing products in New York and in this judicial district. ¶¶ 3–4, 27. Defendant's counsel, furthermore, submitted a declaration stating: "Of the orders alleged to be infringing by Plaintiff, 2.86% of those orders were shipped to the State of New York." *See* Dkt. No. 17 at ¶ 3. Such

5

contacts are sufficient to confer specific jurisdiction under New York law, N.Y.C.P.L.R. § 302(a)(1), *see Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) ("[D]istrict courts in this circuit have concluded that the 'single act' of selling counterfeit goods into New York satisfies the long-arm statute under section 302(a)(1).")[2] and under the Constitution's guarantees of due process, *see id.*; *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458 JS ETB, 2012 WL 2001443, at *4 (E.D.N.Y. June 4, 2012) ("Here, Defendants marketed and sold their products nationwide through Amazon and eBay, and, on at least three occasions, received orders from Plaintiff in New York and arranged for products to be shipped to Plaintiff in New York. Such conduct is sufficient to satisfy due process's 'minimum contacts' inquiry."). Viewing the allegations in the light most favorable to GMS, as I must at this stage of the proceedings, *see Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir.2008), the Complaint adequately alleges that Defendant sold infringing products in New York and specifically in the Southern District of New York. I find, therefore, that the Complaint adequately pleads "a prima facie showing of jurisdiction." *Dorchester*, 722 F.3d at 85.[3]

---

[2] In *Chloe*, I note, the Second Circuit did not expressly decide whether "the single act of shipping a counterfeit" product was sufficient to confer personal jurisdiction, because, among other things, the defendant "also operated a highly interactive website" where bags were offered for sale to New York (and other) consumers. *Chloe*, 616 F.3d at 170. However, as *Chloe* notes, district courts have found such acts sufficient to confer personal jurisdiction. *See, e.g., Mattel, Inc. v. Adventure Apparel*, No. 00 CIV. 4085 (RWS), 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) ("Here, [Plaintiff] ordered allegedly infringing merchandise from [Defendant] over its web site, using his credit card, and [Defendant] shipped that merchandise into New York. . . . These activities were sufficient to bring [Defenfant] into the category of a defendant "transact[ing] any business," via the internet, in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1).").

[3] The holding here is consistent with the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1782, 198 L. Ed. 2d 395 (2017). There, the Court found specific jurisdiction lacking where the defendant pharmaceutical company did not develop, manufacture, label, or ship the allegedly harmful drug from the relevant state forum, and the nonresident plaintiffs did not buy the drug from the state or allege to have been injured there. The Supreme Court held that "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue," not simply contacts with third parties or contacts unrelated to the lawsuit. *See Bristol-Myers*, 137 S. Ct. at 1781. Here, by contrast, the sales of infringing goods in New York form the basis of the claims at issue in this case. Furthermore, the holding here is also consistent with a second recent Supreme Court case, *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559, 198 L. Ed. 2d 36 (2017). There, the Court reiterated that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF*, 137 S. Ct. at 1558. In

## II. Venue is Proper

### a. Legal Standard

A Rule 12(b)(3), Fed. R. Civ. P., motion requires the court to determine if venue is proper under the requirements set forth in 28 U.S.C. § 1391(b). Plaintiff bears the burden of establishing that venue is proper. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). Where the Court does not conduct an evidentiary hearing on the motion, the plaintiff must make a prima facie showing of venue on the basis of pleadings and affidavits. *Id.*

#### i. Venue Under § 1391(b)(1)

Under § 1391(b)(1) venue is proper in any judicial district "in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. 1391(b)(1). Furthermore, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). This definition of residency contrasts with the definition of residency applicable to natural persons. *See* § 1391(c)(1) ("[A] natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled). Finally, under § 1391(d), "in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would

---

*BNSF*, as the Supreme Court itself highlighted, general jurisdiction was at issue, not specific jurisdiction, and the question was whether the corporate defendant had sufficient contacts to render it at "home" in the forum state. *See id.* at 1558. ("Because neither Nelson nor Tyrrell alleges any injury from work in or related to Montana, only the propriety of general jurisdiction is at issue here."). In the instant action, all parties agree that SunFrog is not subject to general jurisdiction in New York. Personal jurisdiction is based instead on SunFrog's specific suit-related conduct in the forum.

7

be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d).

Reading these provisions together, it becomes apparent that the venue inquiry collapses into the personal jurisdiction inquiry for entities that are not natural persons. *HomeoPet LLC v. Speed Lab., Inc.*, No. 14-CV-663 JFB AKT, 2014 WL 2600136, at *13 (E.D.N.Y. June 11, 2014) ("In the instant case, because plaintiff has made a prima facie showing of personal jurisdiction over defendant (at least for the breach of contract claim), it follows that plaintiff has made a prima facie showing that defendant resides in New York for venue purposes."). That is, where a defendant is subject to the court's personal jurisdiction with respect to the civil action in question, venue will be proper in the court's judicial district.

### ii. Venue Under § 1391(b)(2)

Under § 1391(b)(2) venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Courts conduct a two-part inquiry to determine whether venue is appropriate under Section 1391(b)(2). First, the Court must "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir.2005). Second, the Court determines whether "a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to [those] claim [s] ... have occurred in the district in question.'" *Id.* (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir.2005)).

"Under section 1391(b)(2), venue is proper for a trademark infringement claim in each jurisdiction where infringement is properly alleged to have occurred." *Hsin Ten Enter. USA, Inc. v. Clark Enterprises*, 138 F. Supp. 2d 449, 459 (S.D.N.Y. 2000). "At a minimum, the defendant

8

must have targeted its marketing and advertising efforts at the district in question, or have actually sold its products there." *Mattel, Inc. v. Adventure Apparel*, No. 00-cv-4085, 2001 WL 286728, at *4 (S.D.N.Y. Mar. 22, 2001) (internal quotation marks omitted).

### b. Application

In the current case, Defendant moves to dismiss for improper venue, arguing that, under § 1391(b)(2), a "substantial part of the events or omissions giving rise to the claim" did not occur in the Southern District of New York. Defendant argues that GMS Artists mostly reside outside of the Southern District of New York and that only 2.86% of SunFrog's allegedly infringing sales occurred in New York.

Whether venue is proper under § 1391(b)(2), and whether Defendant's 2.86% sales should be deemed "substantial," are close questions of law.[4] These questions are moot, however, since I find that venue is proper under the alternative provision of § 1391(b)(1).

Under § 1391(b)(1), venue is proper where the defendant is a "resident," which in turn is defined (for all entities, incorporated or not, with "the capacity to sue or be sued") in subsections § 1391(c)(2) and § 1391(d) as the judicial district in which the entity is subject to the court's jurisdiction. Here, as discussed above, the Complaint adequately alleges that Defendant sold infringing products in New York, specifically in the Southern District of New York, and the Complaint makes a prima facie showing of personal jurisdiction. *See* Complaint at ¶¶ 3–4, 27. Since the Court has personal jurisdiction over Defendant with respect to the civil action in

---

[4] One recent district court found that where "99.9% of [Defendant's] sales of the allegedly infringing product occurred outside of this district," a "substantial amount" of sales did not occur in the district and venue was therefore not proper under § 1391(b)(2). *See Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-9875 (JPO), 2018 WL 941747, at *3 (S.D.N.Y. Feb. 16, 2018). Other district courts have been less demanding. *See, e.g., Mola, Inc. v. Kacey Enterprises, LLC*, No. 10-CV-1045S, 2011 WL 3667505, at *7 (W.D.N.Y. Aug. 21, 2011) ("There is no minimum percentage of total sales that must be met. Here, Defendants sold seven allegedly infringing products worth $1,001 in New York. These sales are sufficient to qualify as 'a substantial part of the events.'"); *Schieffelin & Co. v. Jack Co.*, 725 F.Supp. 1314, 1320 (S.D.N.Y.1989) (collecting cases).

9

question, Defendant is a "resident" of Southern District of New York and venue is proper under § 1391(b)(1).[5]

If, after discovery, the facts change from those stated here, Defendant may move again to dismiss for improper venue.

### III. The Complaint States Claims for Relief

Defendant makes a series of arguments why the Complaint fails to state plausible claims for relief. In evaluating the sufficiency of a complaint under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the nonmoving party's favor. *Patane v. Clark*, 503 F.3d 106, 111 (2d Cir. 2007). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

#### a. The Complaint Although Providing Adequate Notice to Defendant on Most Issues is Deficient for Failure to Adequately Allege Plaintiff's Status as Exclusive Licensee with Adequate Specificity

Defendant argues that the Complaint fails sufficiently to identify the particular trademarks at issue, the particular products or marks alleged to have infringed on said trademarks, and Plaintiff's status as exclusive licensee. The motion is denied except in one respect, *i.e.*, Plaintiff's rights as exclusive licensee as to each trademark in this suit.

---

[5] In this opinion I find that venue is proper, but not for the precise reasoning that Plaintiff recommends the court adopt. Plaintiff argues that Defendant's failure to move to dismiss for lack of personal jurisdiction means *necessarily* that venue is proper under § 1391(b)(1) and § 1391(c)(2). District courts are split on this question, however, with the weight of authority holding that the failure to move to dismiss for lack of personal jurisdiction, resulting in waiving any further objection to personal jurisdiction, *see* Fed. R. Civ. P. 12(h), is not fatal to a motion to dismiss for lack of venue. *See e.g., Bell v. Classic Auto Grp., Inc.*, No. 04 CIV. 0693 (PKC), 2005 WL 659196, at *5 (S.D.N.Y. Mar. 21, 2005) (concluding that venue should be analyzed as to the "time of filing," regardless of whether a defendant may have later waived a personal jurisdiction defense); *Rankel v. Kabateck*, No. 12 CV 216 VB, 2013 WL 7161687, at *3 (S.D.N.Y. Dec. 9, 2013); *Powell v. Monarch Recovery Mgmt., Inc.*, No. 15-CV-2162 (MKB), 2016 WL 8711210, at *4 (E.D.N.Y. Jan. 22, 2016). Although I find relevant Defendant's failure to move to dismiss on personal jurisdiction, I decline to find venue proper on the basis of this waiver argument alone.

10

The Complaint provides three exhibits detailing the marks forming the basis of Plaintiff's allegations:

- Exhibit A lists and depicts sixteen marks owned by the GMS Artists. It indicates that ten of those sixteen marks have trademark registrations, that four have trademark applications, and that two are "common law" trademarks.
- Exhibit B provides the trademark registrations for the ten registered marks.
- Exhibit D provides fourteen screenshots of SunFrog's website offering for sale fourteen products that appear to contain the sixteen marks[6] identified in Exhibit A. The screenshots do not contain dates.

I find that such allegations are specific enough to put Defendant on notice of the claims against it. While the Complaint, filed December 28, 2017, does not allege a particular time period in which the alleged infringement occurred, the Complaint alleges that SunFrog began its operations as early as June 2013 and that GMS discovered various infringing products offered for sale around July 2016. The period between June 2013 and the filing of the Complaint is specific enough in scope.

SunFrog takes issue with the ambiguity of the language referring to Exhibit A as a "non-exhaustive list of the GMS Artists' trademarks." Complaint at ¶ 12. This concern lacks basis. Exhibit A lists sixteen particular marks, and Exhibit D further provides examples of infringing products for *each* of those sixteen marks. Exhibit B indicates whether the particular mark has a trademark registration. The Complaint adequately puts Defendant on notice of Plaintiff's claims as to these sixteen marks, and the lawsuit will be limited to these sixteen trademarks. If Plaintiff

---

[6] Two products allegedly each infringe on two trademarks, and so Exhibit D provides fourteen, rather than, sixteen examples.

11

learns of instances of infringement relating to additional marks, it can move for leave to supplement its Complaint, showing its recent acquisition of knowledge.

Finally, Defendant argues also that the Complaint is insufficient as to Plaintiff's ownership or status as exclusive licensee of the sixteen trademarks at issue. The Complaint alleges, in conclusory language, only that all such trademarks are licensed exclusively to GSM. *See* Complaint at ¶ 9 ("Plaintiff is the sole and exclusive worldwide merchandise licensee for . . . [the GMS Artists]."); ¶ 13 ("Pursuant to license agreements between Plaintiff and the GMS Artists, Plaintiff and its authorized sub-licenses have been granted the sole and exclusive right to manufacture, distribute, promote, advertise, market, offer for sale and/or sell the GMS Artists' Merchandise . . ."). Such conclusory allegations as to Plaintiff's source of right are insufficient notice. Plaintiff must describe its interest as to each of the sixteen marks, and, if an exclusive licensee as to any, shall allege or exhibit the relevant license agreements.

### b. The Complaint Adequately Pleads "Trademark Use" (Count II and IV)

Next Defendant argues that "the Complaint must be dismissed because SunFrog has not made a trademark use of the GMS Artists' marks." Defendant's brief is confusing as to the basis of this argument, arguing variously that the marks were for "ornamental" rather than "trademark" use, not serving to identify the seller as the origin; that Defendant was merely a "service provider," asserting no control over the branding of the products; and that SunFrog affixed its own labels on its products.

Defendant's argument fails. Plaintiff has stated a plausible claim for relief under Section 43(a) of the Lanham Act, § 15 U.S.C. 1125(a), by alleging that Defendant manufactured and sold products with marks confusingly similar to the GMS Artists' Marks.

Section 43(a) of the Lanham Act provides, in pertinent part, that:

12

> [a]ny person who ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which:
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services of commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). This statute thus "provides for two distinct causes of action: false designation of origin or source, known as 'product infringement,' and false description or representation, known as 'false advertising.'" *Res. Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991). The first prong of Section 43(a) of the Lanham Act prohibits any misrepresentation likely to cause confusion about the source of a product. As with claims brought under 15 U.S.C. § 1114, "a plaintiff must prove, first, that the mark is entitled to protection, and second, that defendant's use of the mark is likely to cause consumers 'confusion as to the origin or sponsorship of defendant's goods.'" *Victorinox AG v. B & F Sys., Inc.*, No. 13 Civ. 4534 (JSR), 114 F.Supp.3d 132, 139, 2015 WL 3929673, at *5 (S.D.N.Y. June 22, 2015) (quoting *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir.2003)). To measure the likelihood of confusion, courts ordinarily will weigh the so-called *Polaroid* factors: (1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of their products; (4) the likelihood that plaintiff will bridge the gap and offer a product like defendant's; (5) actual confusion between products; (6) defendant's good faith; (7) the quality of defendant's product as compared to plaintiff's; and (8) the sophistication of the purchasers. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961). The second prong of Section § 43(a) prohibits any false or misleading misrepresentation. Claims for false advertising must allege: "(1) a false or

13

misleading statement (2) in connection with commercial advertising or promotion that (3) was material, (4) was made in interstate commerce, and (5) damaged or will likely damage the plaintiff." Sussman-Automatic Corp., 15 F. Supp. 3d 258, 269 (E.D.N.Y. 2014) (quoting C=Holdings B.V. v. Asiarim Corp., 992 F. Supp. 2d 223, 242 (S.D.N.Y. 2013)).

"Section 43(a) is a broad federal unfair competition provision which protects unregistered trademarks similar to the way that section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), protects registered trademarks." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). "[I]t is well settled that the standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12 CV 5354, 2016 WL 1317524, at *6 (E.D.N.Y. Mar. 31, 2016) (internal quotation marks omitted).

Here, the Complaint adequately alleges that Defendant, in cooperation with designers, affixed marks to products that were likely to cause customer confusion, and that SunFrog marketed, sold, and distributed these products to end-users. The Complaint includes various exhibits and screenshots with examples of products offered for sale by SunFrog having marks that appear identical to Plaintiff's marks and that are likely to cause customer confusion. The Complaint further details SunFrong's business model of having users upload designs and then distributing products containing those designs. Such allegations are sufficient to state a claim for relief. *See H-D U.S.A., LLC v. SunFrog, LLC*, 282 F. Supp. 3d 1055 (E.D. Wis. 2017) (upholding similar trademark claims by Harley Davidson against SunFrog).

Finally, having dismissed on consent the claims based on § 1114, Count II of the Complaint is now duplicative of Count IV and is therefore dismissed. Count IV, which alleges false designation of origin under § 1125, encompasses the allegations of Count II, which alleges direct infringement of trademarks under § 1114 and § 1125.

14

### c. The Complaint States a Claim for Contributory Infringement

Liability under the Lanham Act may also be premised on a theory of contributory infringement. The Second Circuit has stated that "there are two ways in which a defendant may become contributorially liable for the infringing conduct of another: first, if the service provider 'intentionally induces another to infringe a trademark,' and second, if the service provider 'continues to supply its [service] to one whom it knows or has reason to know is engaging in trademark infringement.'" *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 106 (2d Cir.2010) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 845 (1982)).

Here, the Complaint adequately alleges that SunFrog provided a forum for designers to affix trademarks to products and that SunFrog then manufactured and distributed these products. The Complaint, read in the light most favorable to Plaintiff, adequately alleges that SunFrog knew or had reason to know that trademark infringement was occurring. Defendant's argument that it has in place appropriate procedures for dealing with trademark infringement (*i.e.*, the Reporting Tool) and that it removes infringing products within a reasonable time is an argument best made after discovery at summary judgment.

## CONCLUSION

For the reasons stated above, Defendant's motion is denied in part and granted in part. I hold that venue is proper, but dismiss all the claims for Plaintiff's failure to allege its interest in the sixteen marks at issue in this case. Plaintiff's claims pursuant to 15 U.S.C. § 1114 are also dismissed on consent and with prejudice, and Count II is dismissed as duplicative of Count IV. I grant Plaintiff leave to file an amended complaint, consistent with this opinion, by August 24, 2018. Defendant shall file its answer by September 13, 2018. The parties shall appear for their initial case management conference on September 21, 2018, at 10:00 A.M.

SO ORDERED.

Dated:   August 8, 2018
         New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge